UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____  )
                                     )
KEVIN AYRES, et al.                  )
                                     )
            Plaintiffs,              )
                                     )
     v.                              )    Civil Action No. 18-00265
                                     )
ISLAMIC REPUBLIC OF IRAN             )
                                     )
            Defendant.               )
_____  )

**OBJECTION OF ISIAH J. YOUNG AND CHYLA D. YOUNG TO REPORT OF SPECIAL MASTER RE: ISIAH J. YOUNG AND CHYLA D. YOUNG (ECF 56)**

COMES NOW, Plaintiffs Isiah J. Young and Chyla D. Young, ("Young Children") by and through counsel and in accordance with Fed. R. of Civ. P. 53(f) and the February 3, 2020 Administrative Plan (ECF 20) adopted by this Court hereby file their timely objection to Report of Special Master Re: Virgil T. Young Jr., Isiah J. Young and Chyla D. Young ("Report of Special Master" and/or "RSM".)[1]  *See* Administrative Plan, ¶6.  In Support of this Objection, Plaintiffs submit the following to the Court for consideration:

The Young Children bring their claim for the solatium damages based on their own personal damages suffered as a result of their father's service at the Marine Barracks in Beirut Lebanon on October 23, 1983 and the days thereafter. RSM at p.3-4.  While in Beirut, and in the immediate aftermath of the bombing, their father, Virgil Young, Jr. experienced the explosion and spent several days removing bodies and body parts and placing them in body bags. *Id*.  In November 1983, Virgil Young, Jr. returned to Camp Lejuene and his family and was honorably

---

[1] ECF 56, Report of Special Master Re: Virgil T. Young Jr., Isiah J. Young and Chyla D. Young addresses the claims of the entire Young Family who are plaintiffs in this matter.  This Objection is filed only on behalf of Plaintiffs Isiah J. Young and Chyla D. Young.

1

discharged. *Id.* The family then moved to Philadelphia, and Virgil Young, Jr. began his destructive lifestyle, including abusing alcohol, engaging in family arguments, and becoming more and more abusive towards his wife and children. *Id*. *See also* Declaration of Isiah Young at ¶¶8-9, attached hereto as Exhibit A.  As a result thereof, the Young Children's mother became increasingly afraid of her husband, and in 1986 filed for divorce and fled with her children to England.  RSM. at 5, Ex. A at ¶14, and Declaration of Chyla D Young at ¶13, attached hereto as Exhibit B. The loss of their father as a presence in their lives, and his erratic and violent behaviors that plagued him over the years from his diagnosed PTSD resulting from his service in Beirut had a profound impact on the Young Children. Ex. A, ¶¶16, 18 and Ex. B, ¶15, 17.  *See also* Letter from Peter Edison MBACP, which recently became available to the Plaintiff, Mr. Young and is attached hereto as Exhibit C.[2]  Isiah's counselor confirms his treatment and states "the relationship with his father was more fractured, distant and limited. His father's absence, strict manner and aggressive behaviours all came after he returned [from] serving in Beirut Lebanon." Ex. C.  His counselor goes on to state, that this "affected Isiah's development from a child and into manhood". Ex.C.

At the time of the bombing, Isiah Young was 3 years old.  Ex. A., ¶6.  Chyla Young was 2 months old.  Ex. B, ¶2.

Fed.R. of Civ. P. 53(f)(3), provides that the court must review objections to factual findings *de novo*.  In his Report to the Court, Special Master Balaran recommends that the Young Children receive downward departures, because although the Young Children both testified in their

---

[2] Federal Rule of Civil Procedure 53(f), when acting on a master's report and recommendations, provides "court must afford an opportunity to be heard and *may receive* evidence, and may: adopt or affirm; modify; wholly or partly reject or reverse; or resubmit to the master with instructions." Rule 53 is similar to 28 U.S.C. § 636(b)(1)(C), when a district court reviews the recommendations of a magistrate judge, the district judge "may receive further evidence."

Declarations that they were emotionally damaged and have required counseling as a result of their father's post-Beirut destructive behaviors, their infancy and lack of ability to tie their father's role in the bombing to their own suffering necessitated a recommendation of a downward departure. RSM-19-20[3].

In his Report, Special Master Balaran states that downward departures have been imposed where the evidence suggests an attenuated relationship between the victim and his family members.RSM-16 *citing Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 86 (D.D.C. 2010). Special Master Balaran however fails to take into consideration that any attenuated relationship between Isiah and Chyla and their father was caused by the injuries their father suffered from the Marina Barracks Bombing. Both Isiah and Chyla testified in essence that their mother kept them from their father to protect them because of how the Marine Barracks Bombing negatively impacted Virgil. They should not be penalized because of this attenuated relationship by imposing a downward departure from the damages that are typically awarded to injured terror victims. Instead, they should be completely compensated to recognize their loss.

Special Master Balaran also advises the Court that in cases where an injured serviceman like Virgil Young receives $1.5 million in damages for pain and suffering, the courts have reduced the solatium awards "in rough proportion" to the *Heiser* framework for family members to $1 million for spouses, $850,000 for parents, $750,000 for children, and $500,000 for siblings. RSM at 17. The Special Master cautions that downward departure is recommended because of their infancy and other factors they were not able to provide compelling or individualized testimony about their damages. RSM-19. The Special Master recognizes the cases *Bathiard v. Islamic Republic of Iran*, No. 16-cv-1549 (CRC), 2020 WL 1975672, at *8 (D.D.C. Apr. 24, 2020) and *Akins v. Islamic Republic of Iran*,

---

[3] The Special Master also criticizes the Young Children for not providing him with a Declaration from their mother who, because of their young ages might have been able to provide corroborating testimony as to the damages and emotional toll of their father's behavior on them growing up. However, their mother passed away in 2005, and unfortunately her testimony was not available to the Special Master or the Court.

3

332 F. Supp. 3d 1, 44-45 (D.D.C. 2018) where some infants received standard solatium awards, but does not give consideration to other cases where infancy was at issue and the Court still awarded solatium damages without downward departure.

For example, in *Anderson v. Islamic Republic of Iran,* 90 F.Supp.2d 107 (D.D.C. 2000), the Court found that, "[t]here is, however, precedent for awarding damages to children who have had no relationship with a parent victimized by terrorism." In that case, Sulome Anderson, who was unborn at the time her father Terry Anderson was first held captive, had "standing to maintain a cause of action for loss of solatium*." Id.,* at 113 n. 3. There, as in the case with the Young Children here, the court found that Sulome's "total dependence on her mother while young.", and without the ability to connect with her father justified an award to her for own emotional damages *Id.* at 111. Similarly, in *Alejandre v. The Republic of Cuba,* 996 F.Supp.1239, 1249 (S.D.Fla. 1997) the court awarded $8,000,000 for mental pain and suffering and "loss of parental companionship and guidance" to the young daughter of decedent Alejandre, who died after his plane was shot down. While Virgil Young was not killed in the Beirut bombing, he was as the Young Children testified, unable to provide them with the "parental companionship and guidance" one might expect from a parent who was present in their lives. Further, Isiah's and Chyla's Declarations are replete with testimony and evidence of how the diagnosed PTSD of their father from the Marine Barracks Bombing caused his erratic and violent behavior that plagued him over years. And that this behavior resulted in the loss of their father as a presence in their lives, which had and still has a profound impact on the each of them. Moreover, in another judgment entered by this Court to an infant, Sarah Wherland, whose father also served and was killed in Beirut, Lebanon, the Special Master recommended, and the Court approved awarding Miss Wherland the standard amount for solatium damages. See *Estate of Brown v. Islamic Republic of Iran,* 872 F. Supp. 2d 37, 46 (D.D.C. 2012).

The loss of their father's love and affection during the formative years of their childhood, as well as the anger caused by their father's diagnosed PTSD and the fear they each described has had a significant impact on the Young Children. Like Miss Wherland, the Young Children loss their father as a direct result of the Marine Barracks Bombing. The fact that Virgil Young was not killed like Miss Wherland's, does not warrant a downward departure. While the Court must consider each plaintiff's claims on its own merits, the Young Children request that the Court review the Special Masters' recommendation and make an award to each of them in line with the precedents set forth in *Anderson*, *Alejandre* and *Brown*, and enter judgment in their favor without downward departure.

Dated:  February 28, 2022  Respectfully Submitted,

HEIDEMAN NUDELMAN & KALIK P.C.
5335 Wisconsin Avenue, Suite 440
Washington, DC  20015
Telephone:  202-463-1818
Telefax:  202-463-2999

By:  /s/ *Tracy Reichman Kalik*
   Richard D. Heideman (No. 377462)
   Noel J. Nudelman (No. 449969)
   Tracy Reichman Kalik (No. 462055)