**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| KEVIN AYRES, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 1:18-cv-00265 (RCL) |
| ) | |
| THE ISLAMIC REPUBLIC OF IRAN, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**AMENDED REPORT OF SPECIAL MASTER**
**RE: MICHAEL B. OROSS**

On Monday, February 14, 2022, the Special Master filed his reports and recommendations ("Reports") with the Court addressing plaintiffs' claims in the above-captioned case. One report responded to the request for damages brought by Former Air Force Sergeant Michael B. Oross ("Oross Report"). Michael sought damages for pain and suffering resulting from the bombing of the Marine Barracks on October 23, 1983.

The relevant facts underlying Michael's claim are outlined in the Oross Report and will not be repeated except to underscore those with particular bearing on this amended version. Michael did not participate in the search, rescue, and recovery efforts following the bombing. At the time, he was stationed at Rhein Main Air Force Base ("Rhein AB") in Frankfurt, Germany. Rhein AFB was the site chosen at Headquarters Marine Corps, in coordination with the Naval Medical Command and Army Mortuary Affairs personnel, as a staging ground to identify and process the remains of those who perished in the blast. *See* REPORT OF THE DOD COMMISSION

ON BEIRUT INTERNATIONAL AIRPORT TERRORIST ACT, OCTOBER 23, 1983 (December 20, 1983) ("Commission Report") at 119.[1]

Michael recounted participating in the gruesome process of identifying the remains of soldiers killed in the barracks bombing "every day from October 24, 1983, until November 10, 1983."  He testified that this 17-day ordeal resulted in his suffering "post-traumatic stress disorder [and] extraordinary, mental anguish, and emotional distress," for which he has undergone years of counseling and has been prescribed numerous medications to regulate his "anxiety and mood."  In support of his initial request for relief, Michael supplied a letter from the Veterans Administration ("VA") indicating he had received a 30% disability rating.

The Special Master initially denied Mr. Oross' claim on several grounds: *First*, Michael provided no medical documentation confirming his asserted psychological injuries.  As Michael was not independently competent to identify his mental state, the lack of a corroborative professional assessment of his condition nullified his claim. *Jandreau v. Nicholson*, 492 F.3d 1372, 1376-1977 (Fed.  Cir. 2007). *Second*, the letter from the VA failed not only to explain the basis for Michael's disability rating, it did not indicate whether that rating bore any causal relationship, proximate or otherwise, to the terrorist attack and Michael's experience at Rhein AFB.  The touchstone of proximate causation guiding FSIA proceedings is "some reasonable connection between the act ... of the defendant and the damage which the plaintiff has suffered." *Owens v. Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017) (quoting *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1128 (D.C. Cir. 2004)).  Given the lack of evidence Michael's purported injuries were causally related to his experience at Rhein AFB and

---

[1]  The DOD Commission was impaneled at the direction of the Secretary of Defense on November 7, 1983, and charged with conducting "an independent inquiry into the 23 October 1983 terrorist attack on the Marine Battalion Landing Team (BLT) Headquarters in Beirut, Lebanon."  Commission Report at 2.

not to some other aspect of his military career, the Special Master was constrained to recommend Michael's claim be denied. *Third*, Michael's declaration described neither the particular events that transpired at Rhein AFB nor his particular role in the identification process. By itself, Michael's failure to elaborate on his duties is not fatal. However, compounded with the other deficiencies, this lack of context rendered Michael's claim challenging to assess. Oross Report at 9-11.

On February 23, 2022, Michael sought reconsideration of the Special Master's decision. In support, he supplied over 500 pages of medical records inadvertently omitted from his original submission ("VA Medical Records"). These records, retrieved via the My HealtheVet—a secure online personal health portal for Veterans/VA Patients—were generated at the Chalmers P. Wylie VA ("Wylie VA") in Columbus, Ohio, and span the period between June 1, 2010, to April 20, 2017. Particularly germane to Michael's reconsideration request are Michael's Mental Health Comprehensive Plan notes, dated December 1, 2014 ("Plan Notes"). VA Medical Records at 281-94.

The Plan Notes, drafted by Dr. Heather Axtell, Psy.D., Michael's Mental Health Treatment Coordinator, indicate that Michael suffered from Post-traumatic stress disorder, having met the numerous criteria established in the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5"). Specifically, Dr. Axtell confirmed Michael's exposure "to a traumatic event(s)," namely the "2.5 weeks he aided in the identification of the bodies" during which he witnessed the "dest[ruction]" of fellow soldiers to which he responded with "intense fear, helpless, or horror." Dr. Axtell noted Michael was experiencing "recurrent and intrusive recollections of the event," "recurrent distressing dreams of the event," an "inability to recall an important aspect of the trauma," a "markedly diminished interest or participation in

significant activities," a "feeling of detachment or estrangement from others," a "restricted range

of affect," a "sense of a foreshortened future," "difficulty falling or staying asleep," "irritability,"

"outbursts of anger," "difficulty concentrating," "hypervigilance," and an "exaggerated startle

response."  Dr. Axtell concluded that Michael was suffering from a  "clinically significant

distress or impairment" in his "social, occupational, or other important areas of functioning."

VA Medical Records 284-86.  Doctors at the Wylie VA further diagnosed Michael with

"Persistent depressive disorder (dysthymia)," "Generalized anxiety disorder," and "Other

specified trauma—and stressor-related disorders," for which they prescribed a regimen of

medications.  *Id.*

Significantly, Dr. Axtell's professional assessment was generated in service of Michael's

treatment and not in support of his underlying claim.

The VA Medical Records amply address the first two deficiencies enumerated above.

They offer proof of Michael's deteriorating psychological state and establish a causal link

between his frail mental condition and his duties at Rhein AFB.  And although Michael is

reticent to discuss those duties, several independent accounts exist.  One particularly chilling

narrative is offered by Lt. Bonnie J. Tierney (Ret.), the Mass Casualty Officer at Rhein AFB.  Lt.

Tierney recounts, for example, how:

> Day after day we moved body parts from one bag to another.  I remember one particular day I was helping a young airman pick up a body bag.  He was standing at the top of the bag, let's just say north and I was standing south, and in between we held the remains of soldiers.  The bag wasn't completely zipped and a leg fell out and off into my hands.  I caught it before it hit the ground and liquid was oozing out and then I saw maggots eating the leg.  My fingers went inside his leg, and it reminded me of the days on the farm when I would pick "rotten tomatoes" and my fingers would get tangled in the vines and I would pick a rotten tomato.  The smell was so bad I would often wash my hands in the field with a good tomato to take away the stench.  The stench was horrible.  Nothing could be worse than smelling decayed bodies, not just one body, but hundreds of decayed body parts.  To this day, I have a hard time swallowing as I think about what I saw during that

- 4 -

month.  I remember the smell like it was yesterday.  The smell remains with you in your nostrils forever…it's unimaginable really.  I faintly remember the people with whom I worked but I remember being horrified by what I saw when we uncovered all the remains of the later identified 241 Marines.

Tierney, Bonnie J., LOCKED IN TIME—I STILL REMEMBER AND ALWAYS WILL, Outskirts Press, Inc. 2007, at 27-28.

The accounts offered by Lt. Tierney and others, including the DOD Commission, confirm that Michael's ordeal while at Rhein AFB eclipsed in many significant ways the experiences described by service personnel to whom our courts have awarded $1.5M.  *See*, *e.g.*, *Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7 (D.D.C. 2012) (awarding Thomas Hoke $1.5M who identified and transported wounded for approximately two days); *Worley v. Islamic Republic of Iran*, 75 F. Supp. 3d 311(D.D.C. 2014) (awarding Mario Vasquez $1.5 M who dug through the rubble for seven hours, finding bodies and body parts);  *Bova v. Islamic Republic of Iran*, No. 15-cv-01074, 2020 WL 2838582 (RCL) ( D.D.C. May 31, 2020) (awarding Alan Opra $1.5M who "worked a little bit on the recovery," and briefly encountered pieces of human remains and flesh).

In light of Michael Oross' uniquely horrific experience at Rhein AFB, supported by medical documentation attesting to the depth of his psychological trauma and establishing the necessary causative link to the terrorist attack, the Special Master recommends Michael Oross receive a $500,000 enhancement to the presumptive $1.5 million award for a total of $2 million.

**CONCLUSION**

For the aforementioned reasons, the Special Master recommends Michael Oross receive

Two Million Dollars ($2,000,000) in compensatory damages for pain and suffering.

Dated: March 28, 2022                              Respectfully submitted,

                                                  By:*/s/ Alan L. Balaran*
                                                  Alan L. Balaran, Esq.
                                                  Special Master